## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

AMANDA CHRISTINE CLARK,

      Plaintiff,

v.                                                  Case No:  2:17-cv-501-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

    Plaintiff Amanda C. Clark seeks judicial review of the denial of her claims for

disability and disability insurance benefits ("DIB") by the Commissioner of the Social

Security Administration ("Commissioner").   The Court has reviewed the record, the

Joint Memorandum (Doc. 24) and the applicable law.   For the reasons discussed

herein, the Court recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and
Recommendation's factual findings and legal conclusions.   A party's failure to file written
objections waives that party's right to challenge on appeal any unobjected-to factual finding
or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th
Cir. R. 3-1.   In order to expedite a final disposition of this matter, if the parties have no
objection to this Report and Recommendation, they promptly may file a joint notice of no
objection.

## I.    Issues on Appeal[2]

Plaintiff raises five issues on appeal:[3] (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff engaged in substantial gainful activity ("SGA") from 2014 to 2015; (2) whether the ALJ properly weighed the opinion of the medical expert, Ronald Kendrick, M.D.; (3) whether the ALJ properly weighed the opinion of psychological consultant Nancy Kelly, Psy.D.; (4) whether substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work; and (5) whether substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy.

## II.   Summary of the ALJ's Decision

On October 15, 2010, Plaintiff filed an application for DIB, alleging her disability began on October 13, 2010.   Tr. 216, 439-46.   Plaintiff's claim was denied initially on March 22, 2011, and upon reconsideration on June 28, 2011.   Tr. 260-62, 266-67.   On August 8, 2011, Plaintiff requested a hearing before an ALJ.   Tr. 269-70.   On July 31, 2013, ALJ M. Dwight Evans held a hearing at which Plaintiff testified, and on January 3, 2014, ALJ Evans found that Plaintiff was not disabled from October 13, 2010 through the date of the decision.   Tr. 179-215, 227-47.   On

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will address the issues in a different order than the Joint Memorandum.

June 26, 2015, the Appeals Council granted Plaintiff's request for review and remanded the case.   Tr. 254-57.   ALJ Maria C. Northington held a hearing on August 17, 2016, and on December 23, 2016, ALJ Northington[4] found Plaintiff was not disabled from October 13, 2010 through the date of the decision.   Tr. 22-42, 108-177.

At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.   Tr. 24.   The ALJ further found Plaintiff worked from the alleged onset date in 2010 to 2015, but that her work activity only rose to the level of SGA from 2014 to 2015.   Tr. 24-25.   Next, at step two, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease with remote status-post microdiscectomy decompression; lumbar spondylosis; depression; anxiety; intellectual deficits; chronic venous insufficiency; and obesity.   Tr. 25.   At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"   *Id.*   The ALJ determined Plaintiff had the RFC to perform "a limited range of light work"[5] with the following limitations:

---

[4] For the remainder of this Report and Recommendation, references to "the ALJ" are made in reference to ALJ Northington.

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

[Plaintiff has] the ability to occasionally lift and/or carry up to 20 pounds occasionally as defined in the regulations, as well as, lift/carry 10 pounds frequently . . . The claimant has no limits for sitting in an eight-hour workday.   She is capable of standing and/or walking for up to four hours in an eight-hour workday.   In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task nor would it cause her to leave the workstation.   She is able to perform occasional postural functions of climbing ramps/stairs and stooping. She is to perform no crawling, no crouching, no kneeling, and no climbing of ladders/ropes/scaffolds.     Secondary to her mental impairments, she retains the capacity to understand, remember and carryout simple instructions and perform simple routine tasks as consistent with unskilled work.

Tr. 30.   At step four, the ALJ determined Plaintiff was able to perform past relevant work as a "Cashier 2 (DOT #211.462-010; light; SVP 2)."   Tr. 40.   The ALJ made an alternative finding at step five that there were a significant number of jobs in the national economy Plaintiff could perform.   Tr. 40-41.   Thus, the ALJ concluded Plaintiff was not disabled from October 13, 2010 through the date of the decision. Tr. 42.   The Appeals Council denied Plaintiff's request for review on July 18, 2017, and Plaintiff subsequently filed a Complaint with this Court.   Tr 1-3; Doc. 1.   The matter is now ripe for review.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by

---

these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[6] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions. *See e.g.*, 20 C.F.R. §§ 404.1520c, 404.1527 (effective March 27, 2017). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

(11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.   **Discussion**

a.  *SGA finding*

At step one of the sequential process, the claimant must prove she is not engaged in SGA.  *Currie v. Comm'r of Soc. Sec.*, 471 F. App'x 858, 859 (11th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(4)(i).   If the Commissioner determines the claimant is working and that work is SGA, the Commissioner must find the claimant is not disabled regardless of the alleged medical condition and without consideration of the remaining steps in the sequential process.   *Pritchard v. Barnhart*, 140 F. App'x 815, 818 (11th Cir. 2005).   Work activity is substantial if it "involves doing significant physical or mental activities . . . even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a).   Work activity is gainful if the work is done for pay or profit. 20 C.F.R. § 404.1572(b).

For employees, the Commissioner uses several guides to determine whether the work performed was SGA.   *See* 20 C.F.R. § 404.1574.   In evaluating work activity for SGA purposes, the "primary consideration will be the earnings you derive from the work activity."   20 C.F.R. § 404.1574(a)(1).   The Commissioner only considers the amounts actually earned by the claimant, and will also consider whether the claimant was working in a "sheltered or special environment."   20 C.F.R. § 404.1574(a)(2)-(3).   Ordinarily, earnings from work activity show that the claimant engaged in SGA if the earnings average more than "[a]n amount adjusted

for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998."   20 C.F.R. § 404.1574(b)(2)(ii).

Plaintiff argues the ALJ erred in finding that she performed her past work as a cashier at a hardware store at SGA levels and in finding that the cashier position was past relevant work.[7]   Doc. 24 at 13-14.   Plaintiff argues she presented evidence at the hearing that her work activity in 2014 and 2015 was not performed at SGA levels despite having earnings above the SGA limits.   *Id.* at 15.   Specifically, Plaintiff asserts she missed work about four or five days per month and the owner would still pay her for the days missed.   *Id.*   Plaintiff states she was paid $8 per hour and an average of $1,365.33 per month at the job.   *Id.*   Thus, according to Plaintiff, her five missed days per month equate to $320 of unearned income per month, which, when subtracted from her earned income, equals $1,045.33 per month. *Id.*   Plaintiff argues this amount is below the $1,070 per month and $1,090 per month SGA limits for 2014 and 2015,[8]  and thus Plaintiff's work was not SGA.   *Id.*   Plaintiff states that the ALJ's SGA finding was unsupported by substantial evidence because the ALJ failed to make a specific credibility finding about Plaintiff's testimony regarding her missing work.   *Id.* at 16.

---

[7] Plaintiff's argument about the past relevant work finding will be addressed in the step four discussion.

[8] Plaintiff cites to the SSA website for the SGA limits, https://www.ssa.gov/oact/cola/sga.html.

The Commissioner responds that Plaintiff's argument is an "unnecessarily tortuous argument (with math)" and the main point is that Plaintiff stated at the hearing she missed work four or five days a month. *Id.* The Commissioner argues Plaintiff failed to rebut the presumption under the regulations that her work was SGA because she earned above SGA limits. *Id.* at 19. Plaintiff's "uncorroborated testimony" that she missed work "strains credulity," according to the Commissioner, and Plaintiff failed to demonstrate that her cashier job was not performed at SGA levels during 2014 and 2015. *Id.* at 20.

The Court recommends substantial evidence supports the ALJ's SGA finding. In determining whether a claimant performed work at SGA levels, income above the limits in the regulations creates a rebuttable presumption that the claimant engaged in SGA. 20 C.F.R. § 404.1574(b)(2); *Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991). Here, Plaintiff failed to rebut the presumption created by her income. Plaintiff's earnings in 2014 were $13,312, or $1,109.33 per month, and the SGA limit for 2014 was $1,070 per month. Tr. 462; 20 C.F.R. § 404.1574(b)(2)(ii). Plaintiff attempts to rebut the presumption by stating that during her employment she would miss four to five days per month, but her employer would still pay her for the time missed, and thus much of her income was not "earned" under 20 C.F.R. § 404.1574(a)(2). *See* Doc. 24 at 15; Tr. 138-40. Without corroborating evidence, however, this is insufficient to rebut the presumption even without a specific credibility determination by the ALJ. *See Johnson*, 929 F.2d at 598 (plaintiff failed to rebut income presumption with uncorroborated testimony that his wife and son

did most of the work for business and most of his income was attributable to their work).

Even if the ALJ erred in finding Plaintiff performed SGA in 2014, however, the error was harmless. The ALJ found only that Plaintiff performed SGA for one year of her alleged disability period and, significantly, did not find that Plaintiff was performing SGA at the time of the hearing. The ALJ did not stop the analysis at step one by finding Plaintiff was engaged in SGA and not disabled, and instead proceeded to the remaining steps. *See Pritchard*, 140 F. App'x at 818.

### b. Weighing medical source opinions

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the

opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(1)-(6).   Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."   20 C.F.R. §§ 404.1527(c)(2).

Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p, 1996 WL 374188; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(1)-(2); SSR 96-6p, 1996 WL 374180.   State agency medical consultants are considered experts in social security disability programs and their opinions may be entitled to great weight, but only if their opinions are supported by evidence in the record.   20 C.F.R. § 404.1527(E)(2)(i); SSR 96-9p.

Here, Plaintiff argues the ALJ improperly weighed the opinions of two medical sources: medical expert and orthopedic surgeon Dr. Kendrick and psychologist Dr. Kelly.   Because the ALJ thoroughly explained her reasons for assigning the weight

she did to both in light of the objective medical record, however, the Court recommends substantial evidence supports the ALJ's weighing of the medical opinions.

        i. *Dr. Kendrick*

Dr. Kendrick testified at the hearing on August 17, 2016 and gave his opinions on Plaintiff's physical impairments.   *See* Tr. 121-28.   Dr. Kendrick did not evaluate Plaintiff but reviewed most of the medical evidence and testified that Plaintiff "basically ha[s] a bad back" affected by multiple severe impairments.   Tr. 122-23. He testified Plaintiff did not meet or equal a listing orthopedically since the alleged disability onset date and explicitly disagreed with multiple medical source statements by a treating physician opining that she met listings 1.02 and 1.04.   Tr. 123-24.   Dr. Kendrick testified he would limit Plaintiff "close to sedentary due to the pain issues she deals with," including limiting her to standing two hours a day.   Tr. 124.   When the ALJ asked him about Plaintiff's SGA work in 2014, Dr. Kendrick stated Plaintiff is "basically a chronic pain patient" and "people have varying capacities to endure pain . . . [i]t's a total subjective phenomenon," and she apparently endured the pain in 2014.[9]   Tr. 124-26.

The ALJ accepted Dr. Kendrick's opinion that Plaintiff did not meet a listing because it was consistent with the medical evidence.   Tr. 27, 39.   The ALJ gave Dr. Kendrick's opinions about Plaintiff's physical limitations "moderate" weight:

> The undersigned gives Dr. Kendrick's opinion moderate weight as the undersigned opined the light work and the stand/walk 4 hours in an 8

---

[9]  Plaintiff testified that she had not taken any pain medication since 2014.   Tr. 122.

hour workday is more appropriate given her [SGA] work in 2014-15 and her activities of daily living.   The undersigned notes Dr. Kendrick opined the claimant is limited to standing/walking 2 hours in an 8 hour work day but given her work activity in 2014-15, that required standing and walking more than 2 hours in an 8 hour work day, the undersigned took her to standing/walking 4 hours in an 8 hour work day; which accommodates her past relevant work and accommodates the cited jobs by the vocational expert.    Also even if she were limited to standing/walking 2 hour[s] in an 8 hour work day the sedentary jobs indicated below still remain.

Tr. 40.

Plaintiff challenges the portion of the ALJ's decision rejecting Dr. Kendrick's opinion limiting Plaintiff to sedentary work based on her physical impairments. Doc. 24 at 21-22.   Plaintiff argues the ALJ's finding that Plaintiff could stand four hours in an eight-hour workday was unsupported by substantial evidence.   *Id.* at 22. Plaintiff also argues her activities of daily living "are not dispositive of one's ability to perform sedentary work" and that contrary to the ALJ's assertion, Plaintiff did not testify that she helps her elderly mother.   *Id.* at 23-24.   Plaintiff further argues Dr. Kendrick's opinions were consistent with other medical opinions in the record.   *Id.* at 24.   The Commissioner responds that the ALJ's evaluation of Dr. Kendrick's opinion was supported by substantial evidence and argues Plaintiff's hearing testimony establishes she "had no restrictions[.]"   *Id.* at 25-27.   The Commissioner notes Plaintiff testified she took care of her two children and mother, drove, cleaned, shopped, cooked, took the bus, paid bills, maintained a house, and other activities. *Id.* at 27.   Finally, the Commissioner argues that Dr. Kendrick's opinions were not consistent with other medical opinions in the record and were much less restrictive

- 12 -

than other opinions, and, in any event, the ALJ properly rejected the other medical opinions.   *Id.* at 28.

The Court recommends the ALJ properly weighed and considered Dr. Kendrick's opinion.   First, the Court disagrees with Plaintiff's contention that the ALJ "rejected" Dr. Kendrick's opinion.   *See* Doc. 24 at 21.   The ALJ thoroughly discussed Dr. Kendrick's hearing testimony and opinion and assigned it moderate weight, accepting Dr. Kendrick's opinion that Plaintiff did not meet a listing and mostly accepting his opinions otherwise.   *See* Tr. 27, 40.   The ALJ rejected the portion of his opinion that limited Plaintiff to sedentary work and standing two hours a day, only disagreeing to the extent the ALJ found Plaintiff could stand four hours a day.   *See* Tr. 40.   Also, contrary to Plaintiff's assertion, Dr. Kendrick's opinion contradicted other medical opinions in the record, including a medical source statement from treating physician Stephen Ross, M.D., opining that Plaintiff met listings 1.02 and 1.04.   *See* Tr. 994-1006.   Further, the ALJ determined Dr. Kendrick's limitation of Plaintiff to standing for two hours was not consistent with Plaintiff's SGA work in 2014 or Plaintiff's testimony about her activities of daily living.   Tr. 40.   Thus, contrary to Plaintiff's assertion, the ALJ stated with particularity the weight given to Dr. Kendrick's opinion.   *See Winschel*, 631 F.3d at 1178-79.   Accordingly, the Court recommends substantial evidence supports the ALJ's decision to afford moderate weight to Dr. Kendrick's opinion.

ii. *Dr. Nancy Kelly*

Dr. Kelly is a psychologist who examined Plaintiff once on January 18, 2013 at the request of the Commissioner.   Tr. 1038-39, 1043.   In her evaluation, Dr. Kelly noted Plaintiff reported symptoms of depression and anxiety, as well as difficulty concentrating and difficulty with organization, planning, abstracting and sequencing abilities.   Tr. 1039.   Dr. Kelly's mental status examination indicates Plaintiff was poorly groomed; her mood was "dysthymic[;]" her affect was "dysphoric[;]" her motor behavior was "lethargic[;]" her memory skills appeared impaired; her cognitive functioning appeared limited; her insight was limited and her judgment was poor.   Tr. 1040-41.   Dr. Kelly also noted, however, Plaintiff was cooperative; she related adequately; she was appropriately dressed with normal posture; her voice was clear; she exhibited receptive language skills and was expressive; and her sensorium was clear.   *Id.*   Dr. Kelly determined Plaintiff's IQ was 67, reflecting "significant intellectual deficits," and she opined Plaintiff could follow and understand simple directions and perform simple tasks independently.   Tr. 1043.   Dr. Kelly further opined Plaintiff may have marked difficulty maintaining attention and performing complex tasks independently and moderate difficulty making decisions but can maintain a regular schedule and learn new tasks and relates well to others.   *Id.*

The ALJ discussed at length Dr. Kelly's evaluation of Plaintiff and her findings, emphasizing that Dr. Kelly opined Plaintiff can follow directions, perform simple tasks, maintain a regular schedule, learn new tasks and adequately relate to

others.  *See* Tr. 32-33, 38.  The ALJ gave "some weight" to Dr. Kelly's opinions on

Plaintiff's mental condition:

> Dr. Kelly's opinion is given some weight.   The undersigned has included
> the claimant's anxiety as a severe impairment to resolve all doubt in her
> favor.   Dr. Kelly noted the claimant may have marked difficulties
> maintaining attention, performing complex tasks independently, which
> is not-inconsistent with the above residual functional capacity.

Tr. 38.   Plaintiff argues the ALJ failed to explain why Dr. Kelly's finding that

Plaintiff may have marked difficulties maintaining attention is not inconsistent with

the RFC assessment.   Doc. 24 at 29.   Plaintiff further argues that the ALJ's failure

to explain this point resulted in a decision unsupported by substantial evidence

because the ALJ failed to state with particularity the weight given to Dr. Kelly's

opinion and the reasons therefor.   *Id.* at 30.   The Commissioner responds that Dr.

Kelly's statements about Plaintiff's vocational capacity were not inconsistent with the

ALJ's RFC assessment, stating, "despite Dr. Kelly's opinion that Plaintiff *might* have

marked limitations in maintaining attention, Plaintiff could follow and understand

simple directions and perform simple tasks independently, which was the limitation

the ALJ assessed in the RFC[.]"   *Id.*   The Commissioner argues Dr. Kelly did not

find that "the *possibility* of marked limitations in maintaining attention" precluded

performance of simple tasks, and she "equivocated about marked limitations" in

maintaining attention.   *Id.*

The Court recommends the ALJ properly weighed and considered the opinions

of Dr. Kelly.   The ALJ discussed the opinions and findings at length and stated with

particularity that she gave Dr. Kelly's opinion some weight, giving specific reasons

supporting her assessment. *See Winschel*, 631 F.3d at 1178-79. The Court also finds Dr. Kelly's opinion that Plaintiff may have marked limitation with maintaining attention is not inconsistent with the ALJ's RFC assessment. *Compare* Tr. 1043 *with* Tr. 30. The ALJ included mental limitations in the RFC:

> Secondary to her mental impairments, she retains the capacity to understand, remember and carryout simple instructions and perform simple routine tasks as consistent with unskilled work.

Tr. 30. It is not clear Plaintiff's possible marked limitation maintaining attention means she cannot understand and carryout simple instructions; indeed, Dr. Kelly explicitly stated Plaintiff was "able to complete all required tasks" and "able to understand instructions and respond to challenges." *See* Tr. 1041. Further, the ALJ accepted some of Dr. Kelly's opinion and found that Plaintiff had severe mental impairments. Tr. 25, 38. Thus, the Court recommends substantial evidence supports the ALJ's consideration of Dr. Kelly's opinion.

### c. Past relevant work

Past relevant work is work a claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1). At the fourth step, the claimant bears the burden of demonstrating that she cannot return to her past relevant work. *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir. 1990)). She must show that she can no longer perform her past relevant work either as she actually performed it or as it is performed in the general economy. *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th

Cir. 2010) (citing *Jackson v. Bowen,* 801 F.2d 1291, 1293-94 (11th Cir.1986)).   Four factors guide the Commissioner in determining whether a claimant has met this burden: "1) objective medical facts and clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability, i.e. the testimony of the claimant and his family or friends; and 4) the claimant's age, education and work history."   *Colon ex rel. Colon v. Astrue*, No. 8:08-CV-1191-T-17TEM, 2009 WL 2997187, at *2 (M.D. Fla. Sept. 18, 2009), *aff'd sub nom. Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236 (11th Cir. 2011) (citing *Tieniber v. Heckler,* 720 F.2d 1251 (11th Cir.1983)).

The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite her impairments.   *See* 20 C.F.R. § 404.1520(f). The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them despite her impairments. *See Lucas,* 918 F.2d at 1574 n.3.   An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2).   The regulations provide that a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."   *Id.*   "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v.*

*Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).   "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant."   *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).   If any impairments were omitted, the omission is harmless if it would not have altered the VE's testimony.   *Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005); *see also Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983).

The ALJ determined that Plaintiff's past relevant work included her job as a cashier at a hardware store in 2014-2015, classified as "Cashier 2 (DOT #211.462-010; light; SVP 2)."  Tr. 40.   The ALJ found at step four that Plaintiff could perform this past relevant work and that the work does not require performance of work-related activities precluded by Plaintiff's RFC.   *Id.*   The ALJ explained:

> The vocational expert testified that this work does not exceed the above residual functional capacity.   The undersigned finds the vocational expert testimony persuasive.   In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

Tr. 40.   Plaintiff argues substantial evidence does not support the ALJ's determination that her job as a cashier qualifies as past relevant work or her determination that she could perform her past relevant work.   Doc. 24 at 9, 11, 16. Plaintiff argues that because the ALJ's finding that the cashier job was performed at SGA levels was unsupported by substantial evidence, her determination that the job was past relevant work was unsupported by substantial evidence as well.   *Id.* at 16. Plaintiff further argues the ALJ's finding that Plaintiff could perform past relevant work was not supported by substantial evidence because the ALJ's finding was based

- 18 -

on the VE's testimony, but the VE explicitly testified that Plaintiff could not perform her past relevant work. *Id.* at 7. The Commissioner concedes the VE testified Plaintiff could not perform her past relevant work because the ALJ's RFC assessment limited Plaintiff to simple work, which would preclude jobs with a reasoning level of 3 or above, precluding the cashier job. *Id.* at 10. The Commissioner argues that the ALJ disagreed with the VE, stating that an individual restricted to simple work could perform a job with a reasoning level of 3. *Id.* The Commissioner then argues, however, the "VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a cashier." *Id.* at 11.

The ALJ's finding that Plaintiff's cashier job was past relevant work is supported by substantial evidence. Past relevant work is work a claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Plaintiff held her cashier job less than three years before the hearing; it lasted about one year; and, as noted, the ALJ's finding that it rose to SGA levels is supported by substantial evidence. *See* Tr. 114. The Court recommends that the ALJ erred in finding Plaintiff could perform her past work, however, but that error was harmless as the ALJ's alternative finding at step five was supported by substantial evidence.

It is the plaintiff's burden at step four to prove that she could not perform her past relevant work. *Barnes*, 932 F.2d at 1359. The ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them despite her impairments. *See Lucas,* 918 F.2d at 1574 n.3. An ALJ may consider a VE's

opinion when making this determination.   20 C.F.R. § 404.1560(b)(2).   Here, the ALJ's step four analysis rests entirely on the VE's testimony.   *See* Tr. 40.   The ALJ states that the VE testified that Plaintiff's past relevant work does not exceed her RFC.   *Id.*   The VE actually testified to the opposite, however, and without further analysis from the ALJ, the Court is unable to determine whether substantial evidence supports the ALJ's step four determination.   *See* Tr. 165.   The Court nonetheless recommends the Commissioner's decision be affirmed because the ALJ's alternative step five determination is supported by substantial evidence.

### d. Step five determination

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987).   If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove she is unable to perform the jobs identified by the Commissioner.   *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work."   20 C.F.R. § 404.1520(a)(4)(v), (g).   In making this determination, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding

must be supported by substantial evidence." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   The ALJ is permitted to consider the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor.   SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991).   The ALJ also is authorized to consider the testimony of a VE as a source of occupational evidence.   SSR 00-4p, 2000 WL 1898704.   "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quoting *Jones*, 190 F.3d at 1229).   The ALJ has an affirmative duty to identify any possible conflict between the VE's testimony and the DOT and to "explain the resolution of the conflict." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362-65 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704).

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, specific job vacancies exist, or Plaintiff would be hired if she applied. *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citations omitted).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule.   As the court recently noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Id.* at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

The ALJ found, alternatively, that jobs exist in significant numbers in the national economy that Plaintiff could perform.   Tr. 40-42.   The ALJ stated:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as ticket taker (DOT #344.667-010; light; SVP 2; 600 local, 10,000 national); call-out operator (accommodates sit/stand) (DOT #237.367-014; sedentary; SVP 2; local, 770, national 19,000); and charge account clerk (DOT #205.367-014; sedentary; SVP 2; 460 local; 7,500 national).

Tr. 41.   Plaintiff argues the ALJ misstated the VE's testimony.   Doc. 24 at 7. Plaintiff asserts the VE testified Plaintiff could only perform the ticket taker job because the RFC assessment included a limitation to simple tasks, which precluded any work requiring a reasoning level higher than 2.   *Id.*   Plaintiff further argues that if the ticket taker job is the only job Plaintiff could perform, 10,000 jobs in the national economy is not a significant number of jobs.   *Id.* at 8.   The Commissioner concedes the VE only identified the ticket taker and explained "she believed that the ALJ's limitation to simple work precluded the performance of jobs that required a . . . reasoning level above 2."   *Id.* at 10.

The ALJ erred by misstating the VE's testimony, as the VE testified the only job Plaintiff could perform given her RFC was the ticket taker job.   *See* Tr. 164-65. The ALJ then asked if Plaintiff could perform other jobs given her RFC if she could perform jobs with a reasoning level of 3, in response to which the VE named the call-out operator and charge account clerk.   *See* Tr. 165-68.   The VE's testimony, however, was that the ALJ's RFC assessment, which included a limitation to simple

- 22 -

tasks, precluded any job above a reasoning level of 2.  *See* Tr. 164-66.  The ALJ's misstatement was harmless, though, as the Court recommends that substantial evidence supports the ALJ's finding that Plaintiff could perform the ticket taker job because 10,000 jobs in the national economy for the ticket taker position is a significant number of jobs.  *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (substantial evidence supported ALJ's finding that 840 jobs in the national economy constituted significant number of jobs); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:17-cv-1374-Orl-22GJK, 2018 WL 840129, at *6 (M.D. Fla. Jan. 25, 2018) (harmless error where ALJ erred as to one job at step five but made valid findings as to a different job); *Johnson v. Comm'r of Soc. Sec.*, No. 5:14-cv-141-Oc-PRL, 2014 WL 12623026, at *5 (M.D. Fla. Sept. 9, 2014).

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **AFFIRMED**.

2.    The Clerk be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(b) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 11th day of January, 2019.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record